**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| MARK EDWARD HUGGINS | CIVIL ACTION NO. 15-2387 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| QUENTIN D. HOLMES, SR. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is Defendant Quentin D. Holmes, Sr.'s ("Chief Holmes") Motion for Summary Judgment (Record Document 16) pursuant to Rule 56 of the Federal Rules of Civil Procedure, filed on behalf of Chief Holmes, individually, and the City of Monroe[1] (the "City") (collectively the "Defendants"), seeking to dismiss all of Plaintiff Mark Edward Huggins' ("Huggins") claims. Huggins filed his response (Record Document 20) to the motion on January 10, 2017, and the Defendants filed a reply (Record Document 23) on January 13, 2017. For the reasons which follow, Chief Holmes' Motion is hereby **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Huggins is Vice-President of the International Union of Police Associations, Local 81, AFL-CIO ("the Union"). See Record Document 1 at 2. In 2011, Chief Holmes was appointed Chief of the Monroe Police Department. See id. The Union serves as a mechanism for communicating concerns within the rank and file of the Monroe Police Department. See id. As Vice-President, Huggins acted as a spokesman for the Union and participated in a number of discussions with Chief Holmes. See id. As Huggins alleges,

---
[1] All claims asserted against Chief Holmes in his official capacity as Chief of the Monroe Police Department are claims against the City. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985). Accordingly, this Motion for Summary Judgment is asserted on behalf of Chief Holmes, individually, and the City.

1

the relationship between the Union and Chief Holmes ultimately deteriorated. See id. On August 4, 2014, the Union issued a vote of "no confidence" in Chief Holmes, which was widely reported in the media in Monroe. See id. at 3. Huggins was subsequently interviewed by reporters for two local newspapers, The Ouachita Citizen and The News Star, regarding the "no confidence" vote. See Record Document 16-1 at 17.

In mid-August, Huggins was told he would be transferred to the Road Patrol Division of the Department. See id. at 8. On September 21, 2014, Huggins was in fact transferred. See Record Document 1 at 3. Huggins alleges his transfer was "a result of his union activities." See id.

The instant lawsuit was filed on September 18, 2015. See Record Document 1. Huggins alleges his transfer was a retaliatory punishment by Chief Holmes for his engagement in union and free speech activities; the punishment and retaliation violated his constitutionally protected right as a citizen to participate in free speech, and to render an opinion on matters of public concern; Chief Holmes' actions violated his constitutionally protected right as a civil service employee to be secure in his employment and to avoid arbitrary reassignment; and his rights were denied through the official custom and policy of Chief Holmes. See id. at 3-4. Huggins asserts a First Amendment retaliation claim under 42 U.S.C. § 1983 against Chief Holmes, individually and in his official capacity as Chief of the Monroe Police Department. See id. at 5. As part of his Section 1983 retaliation claim, Huggins also asserts a failure to promote cause of action, alleging "[d]efendant has stated … there will be no promotions within the department for Complainant or others as a direct result of Complainant's activities." Id. at 4. Huggins also alleges Chief Holmes' actions were a violation of Louisiana state law, but fails to identify a specific statute or

provision. See id. Huggins seeks damages for emotional distress, loss of income, and loss of job opportunity; and also claims punitive damages, attorney fees and interest. See id. at 4-5.

Defendants filed the instant Motion for Summary Judgment on December 16, 2016, arguing: (1) Huggins cannot show the required custom or policy required under Monell; (2) Huggins' retaliatory transfer claim has prescribed; (3) Chief Holmes is not the final decision-maker regarding promotions within the police department; (4) punitive damages are unrecoverable; and (5) Defendants are entitled to qualified immunity. See Record Document 16-9. Huggins filed a response (Record Document 20) on January 10, 2017, and the Defendants replied on January 13, 2017 (Record Document 23).

**LAW AND ANALYSIS**

I. **Legal Standards**

   A. **Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine dispute of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

A non-movant, however, cannot meet the burden of proving that a genuine dispute of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

The Court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). A court may grant summary judgment under Fed. R. Civ. P. 56(f)(3) so long as it provides the parties with "ample notice [and] time to respond" and "consider[s] everything" that the parties claim to be probative of the matters that have been identified. Santana v. Cook Co. Bd. of Review, 679 F.3d 614, 619 (7th Cir. 2012); see also Wang v. Prudential Ins. Co. of Am., 439 Fed. Appx. 359, 363 n.2 (5th Cir. 2011).

### B. Section 1983 Suits: Individual Capacity vs. Official Capacity Claims

Section 1983 authorizes the assertion of a claim for relief against a person who, acting under the color of state law, allegedly violated the claimant's rights under federal law. See 42 U.S.C. § 1983. In Section 1983 suits, government officials may be sued in either their individual or official capacities. A claim against a state or municipal official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 3105 (1985). Individual or personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." Id.

### C. Qualified Immunity in Section 1983 Suits

The qualified immunity doctrine often protects public officials from liability in section 1983 actions brought against a person acting under the color of state law in his individual capacity. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." Ashcroft v. Iqbal, 556 U.S. 662, 685, 129 S.Ct. 1937, 1953 (2009) (internal quotations and citations omitted). In fact, a qualified immunity defense is truly "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 231,129 S.Ct. 808, 815 (2009).

Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Floyd v. City of Kenner, 351 Fed. Appx. 890, 893 (5th Cir. 2009). First, the court must determine whether the plaintiff demonstrated a genuine dispute of material fact as to a violation of a constitutional right. See Pearson, 555 U.S. at 232. Second, the court must determine

whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. A defendant who can validly raise a qualified immunity defense will enjoy its protection so long as the allegedly violated constitutional right was not clearly established at the time of the violation. See id. In other words, the defendant can only be held liable if he violates a right that is clearly established at the time of the violation.

## II. Analysis

### A. Section 1983 Claims against Chief Holmes in his Official Capacity

A lawsuit against a municipal employee in his official capacity "is a suit against the official's office," and is therefore tantamount to a suit against the municipality itself. See Peterson v. Town of Boyce, 2010 WL 3363237, at *2 (W.D. La. 2010), quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989); Graham, 473 U.S. at 165-66. Therefore, Huggins' claims against Chief Holmes in his official capacity are simply another way of pleading Monell claims against the City. Huggins alleges "[i]t is also a violation under 42 U.S.C. 1983 due to a constitutional deprivation inflicted through official custom and policy by … Holmes." Record Document 1 at 5. Huggins' claims fail because Huggins cannot establish a constitutionally deficient policy or custom that caused injury.

In Monell v. Dept. of Social Serv., 436 U.S. 658, 98 S. Ct. 2018 (1978), the Supreme Court held that a municipality cannot be held liable for constitutional torts under section 1983 under a theory of *respondeat superior*, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id.

at 691, 694, 98 S. Ct. at 2036, 2037-38. To succeed on a Monell claim against a municipality, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. See McGregory v. City of Jackson, 2009 WL 1833958, at *2 (5th Cir. 2009), citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003).

For purposes of municipal liability, an official policy may be ... a policy statement, ordinance, regulation or decision, or ... "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Johnson v. Moore, 958 F.2d 162, 167 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir. 1997).

Here, Huggins fails to specify any ordinance or regulation and only presents a conclusory assertion as to this element. In fact, when responding to Chief Holmes' argument regarding this issue, Huggins admits "no testimony has surfaced thus far documenting a custom of retaliatory transfer." Record Document 20-2 at 8. Likewise, Huggins cannot put forth evidence of an official "policy or custom" regarding his failure to promote claim, thus his Monell claim fails. See Ford v. Shreveport City Police Dept., 2011 WL 5546917, at *2 (W.D. La. 2011) (plaintiff's Monell claim against the City of Shreveport failed because he presented no evidence to controvert the defendants' statement that the police department did not have a policy or practice of using excessive force).

## B. Section 1983 Claims against Chief Holmes in his Individual Capacity

### i. Unlawful Transfer

Huggins alleges his transfer was a retaliatory punishment by Chief Holmes for his engagement in union and free speech activities. See Record Document 1 at 5. However, Huggins' claim is prescribed and must be dismissed.

"In § 1983 claims, the applicable statute of limitations is that which the state would apply in an analogous action in its courts." Bourdais v. New Orleans City, 486 F.3d 294, 298 (5th Cir. 2007). In ruling on prescription as to a claimant's constitutional tort claims (Equal Protection/Fourteenth Amendment violations), the Bourdais court applied Louisiana's one-year prescriptive period found in La. C.C. art. 3492 which states, "[d]elictual actions are subject to a liberative prescription of one year." Id.

The law is also clear that "[a] section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." Watts v. Graves, 720 F.2d 1416, 1423 (5th Cir. 1983). Thus, the Supreme Court, in Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28 (1983), held the applicable statute of limitations commenced in a Section 1983 claim when notice of termination was given, and not on the date employment was actually terminated. The existence of notice "is based upon an objective standard, focusing upon when the employee knew, or reasonably should have known, that the adverse employment decision had been made." Clark v. Resistoflex Co., 854 F.2d 762, 765 (5th Cir. 1988). As the Fifth Circuit stated, "[t]he relevant date for determining the beginning date for the limitations period is the day the employee learns that the challenged decision has been

made, not when she feels the effects of that decision." Simotas v. Kelsey-Seybold, 211 Fed.Appx. 273, 275 (5th Cir. 2006).

Here, Huggins knew he was being transferred in August. Huggins testified at his deposition:

> Q. When did you actually learn you were going to be transferred in the summer of 2014?
>
> A. …It was in August…
>
> Q. Do you remember whether it was at the beginning of August or at the end of August of 2014?
>
> A. It was – I want to say it was, like, mid-August, the best I can recall right now….
>
> Q. But you know sometime in mid-August that you were going to be transferred from the investigation division to the patrol division?
>
> A. That's what I was told. I never got anything in writing or anything like that, but that's what I was told.

Record Document 16-1 at 8-9. Huggins' subsequent deposition testimony again confirmed his knowledge of the transfer in mid-August 2014. Addressing allegations of his Complaint, Huggins testified:

> Q. No. 17 and 18, "In the weeks following the vote, complainant received word that … as a result of his union activities, would be transferred to some other division of the department." And that's where you're talking about some time in August, middle of August?
>
> A. That's correct.

Id. at 17. Huggins had knowledge of his transfer in mid-August; therefore, he was required to file his lawsuit one year from that notice. However, he filed the instant lawsuit on September 21, 2015, more than one year from when he received notice of his transfer.

Huggins argues he learned of his transfer on September 21, 2014, the date he received documentation regarding his transfer and was actually transferred, thus, his claim is timely. See Record Document 20-2 at 3. He contends the mid-August conversation about his transfer was informal, and "a discussion of a possible transfer did not translate to any actual injury or harm." Id. at 4. Accordingly, Huggins alleges, "his damage only accrued on the September 21st transfer date," and thus his claim is not prescribed. Id.

Huggins' entire argument is undercut by Simotas and the cases cited above. This jurisprudence is completely ignored by Huggins in his response, who neither attempts to distinguish Simotas, nor cites any legal authority to support his position. Huggins' own deposition testimony shows that he knew he would be transferred in mid-August of 2014. As Chardon and Simotas suggest, the statute of limitations began when Huggins learned the decision to transfer him had been made, not when he was actually transferred. The instant lawsuit was filed more than one year later, on September 18, 2015. Therefore, Huggins' retaliation claim has prescribed and must be dismissed.

Even if Huggins' unlawful transfer claim is not prescribed, he cannot show there is a genuine dispute that his speech motivated his transfer. To prove a First Amendment retaliation claim, Huggins must show that "(1) []he suffered an 'adverse employment decision'; (2) h[is] speech involved 'a matter of public concern'; (3) h[is] 'interest in commenting on matters of public concern ... outweigh[s] the [City's] interest in promoting efficiency'; and (4) h[is] speech [substantially] motivated the adverse employment decision." Cordova v. City of Mansfield, 2006 WL 2513923, at *8 (W.D. La. 2006), citing

Beattie v. Madison County School Dist., 254 F.3d 595, 601 (5th Cir. 2001). As the court stated in Cordova:

> Even if this Court assumes for purposes of this Memorandum Ruling that Cordova satisfies prongs one, two, and three outlined above, she still could not prove prong four, a causal link between her termination and her alleged protected activity. Although Cordova's burden to show that her protected activity was a motivating factor in her termination is not onerous, she must produce at least some evidence that the decision makers had knowledge of her protected activity. See Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 883, n. 6 (5th Cir. 2003) (citing Medina v. Ramsey Steel Co., Inc., 238 F.3d at 684 (5th Cir. 2001).

Id. The Court continued, stating:

> As the Fifth Circuit held in Manning: "If the decision makers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decision makers might have been retaliating against the plaintiff for having engaged in that activity." Manning, 238 F.3d at 883, n. 6; see also Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 168 (5th Cir. 1999) (stating that "if an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.")

Id. Huggins cannot prove that Chief Holmes had any knowledge of his statements to the media prior to his transfer, thus he cannot prove his transfer was retaliatory.

On August 4, 2014, the Union issued a vote of "no confidence" in Chief Holmes. See Record Document 1 at 3. Regarding this vote of "no confidence," Huggins was interviewed by The Ouachita Citizen and The News Star. See id. However, Chief Holmes has testified that he did not read the articles which contained the claimed protected speech prior to transferring Huggins. Huggins was transferred on September 21, 2014. See Record Document 1 at 3. In his deposition testimony, Chief Holmes stated he did not read one of The Ouachita Citizen newspaper articles until December 30, 2015; and that he read the other two The Ouachita Citizen articles the night before his deposition,

11

November 23, 2016. See Record Document 16-5 at 58-59. As for Huggins' statements in The News Star, Chief Holmes clarified in his affidavit that he had not at any time read any other news articles from any newspaper or any other news source quoting or referencing any statement from Huggins regarding the August 4, 2014, "no confidence" vote. See Record Document 16-4 at 2. Absent proof that Chief Holmes read the articles in question, Huggins cannot show a causal link between his protected activity and the alleged retaliatory transfer.

In an attempt to show such proof, Huggins cites to an August 5, 2014, article in The Ouachita Citizen. See Record Document 20-8 at 46-49. In that article, Chief Holmes states the union's vote was "negative publicity" and an effort to "smear me." Id. Huggins is also quoted throughout the article. Huggins argues Chief Holmes' interview and comments to the newspaper document his knowledge of the "no confidence vote and the comments of the union representatives." Record Document 20-2 at 4. The Court, however, does not agree.

Chief Holmes' knowledge of the "no confidence" vote is not at issue, Defendants never asserted Chief Holmes did not know of the "no confidence" vote. Rather, Defendants state Chief Holmes did not read the news articles before transferring Huggins – a fact Huggins' conclusory allegations cannot overcome. As explained above, Chief Holmes did not read any article pertaining to Huggins until December 30, 2014, long after Huggins' transfer on September 21, 2014. Huggins' conclusory statement that Chief Holmes' comments in the August 5, 2014, article "documents his knowledge of the … comments of the union representatives" is not supported by any evidence whatsoever. Even if there was such evidence found in the news articles, the Fifth Circuit has long held

that this "proof" is not competent summary judgment evidence. See Roberts v. City of Shreveport, 397 F.3d 287, 295 (5th Cir. 2005) ("no competent summary judgment evidence supports two other claims of unconstitutional deadly force. The plaintiffs provide only newspaper articles—classic, inadmissible hearsay"); see also Cano v. Bexar County Texas, 280 Fed.Appx. 404, 406 (5th Cir. 2008) ("Newspaper articles, however, are hearsay and therefore do not constitute competent summary judgment evidence").

Since Chief Holmes was completely unaware of Huggins' protected activity, then it could not be said that Chief Holmes might have been retaliating against Huggins for having engaged in that activity. Therefore, even if Huggins' unlawful transfer claim is not prescribed he still is unable to prove his *prima facie* case, and his unlawful transfer claim under Section 1983 is **DISMISSED**.

### ii. Failure to Promote Claim

As part of his Section 1983 retaliation claim, Huggins also asserts a failure to promote cause of action, alleging "[d]efendant has stated … there will be no promotions within the department for Complainant or others as a direct result of Complainant's activities." Record Document 1 at 4.[2] However, Huggins' claim is not properly asserted against Chief Holmes.

"Only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." Johnson v. Louisiana, 369 F.3d 826, 831 (5th Cir. 2004). Chief Holmes is not considered a final decision-maker. The Monroe City

---

[2] Huggins filed this lawsuit on September 18, 2015. See Record Document 1. Huggins was promoted to Sergeant on September 15, 2016. See Record Document 16-4 at 2. Thus, Huggins' claim would address an alleged delay in promotion, rather than the alleged failure to promote.

Charter provides, in part, "[e]xcept as otherwise provided by this charter all departments, offices, and agencies shall be under the direction and supervision of the mayor...." Record Document 16-8 at 12. Promotions within the Monroe Police Department are determined by the Mayor, upon recommendation of Chief Holmes. See Record Document 16-4 at 2. Because Chief Holmes was not the final decision-maker for promotions within the police department, he cannot be liable under Section 1983 for the alleged delay in Huggins' promotion.

Huggins acknowledges that the Mayor is the final decision-maker on promotions within the police department, but states, "[o]n a practical basis, though, it is the Chief of Police … who makes the everyday decisions," thus he is personally liable. Record Document 20-2 at 8. However, Huggins again fails to cite any legal authority in support of his argument and does not address Defendants' cited controlling authority which states otherwise.

In <u>Beattie v. Madison Cty. Sch. Dist.</u>, 254 F.3d 595, 605 (5th Cir. 2001), the Fifth Circuit held that a school principal and a school superintendent – who were not the final decision-makers, and only recommended termination of a teacher for alleged retaliatory reasons – could not be found liable under Section 1983. The court stated:

> As we have noted, Acton and Jones did not fire Beattie directly, but merely recommended her termination to the board, which made the final decision. If Acton and Jones did not cause the adverse employment action, they cannot be liable under § 1983, no matter how unconstitutional their motives.

<u>Id.</u>

As Chief Holmes stated in his affidavit, promotions within the Monroe Police Department are determined by the Mayor, upon his recommendation. See Record

Document 16-4 at 2. Just like the principal and superintendent in Beattie, Chief Holmes cannot be found liable under Section 1983 because he is not the final decision-maker. Huggins has not submitted any evidence to contradict Chief Holmes' statement; therefore, he cannot show there is a genuine issue that Chief Holmes does not have final decision-making authority to promote within the Monroe Police Department. Accordingly, Chief Holmes cannot be found personally liable for Huggins' alleged delayed promotion under Section 1983; Huggins' failure to promote claim is **DISMISSED**.

### C. Punitive Damages

The Supreme Court has held "that a municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762 (1981). Accordingly, Huggins' punitive damage claim against Chief Holmes in his official capacity, which is a claim against the City, is dismissed.

Although punitive damages are recoverable as to individual capacity claims under Section 1983 (see Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983)), Huggins' unlawful transfer claim is prescribed and the claim for punitive damages is also barred by prescription. As discussed above, Huggins' failure to promote claim cannot be asserted against Chief Holmes; therefore, Huggins' failure to promote punitive damage claim should not be considered. However, out of an abundance of caution, the Court will address the merits of Huggins' claim for punitive damages.

Punitive damages may be awarded only when the defendant's conduct "is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." Williams v. Kaufman Cty., 352 F.3d 994, 1015 (5th Cir. 2003), quoting Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994). The latter standard requires

"recklessness in its subjective form," i.e. "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 (1999), quoting Smith, 461 U.S. at 37, n. 6.

Huggins has not submitted any summary judgment evidence of Holmes' evil intent. In fact, Huggins does not address his punitive damage claim at all in his brief. On the other hand, the summary judgment evidence demonstrates Huggins suffered no actual harm or injury. The alleged retaliation and failure to promote did not affect Huggins' basic pay, and Huggins' benefits remained unchanged. See Record Document 1 at 3; Record Document 16-1 at 23. Clearly, Huggins cannot demonstrate Holmes acted with reckless or callous indifference. For the reasons stated, Huggins' claim for punitive damages against Chief Holmes in his individual capacity is **DISMISSED**.

### D. Qualified Immunity

It is clear from the facts of this case, viewed in the light most favorable to Huggins, that Chief Holmes' actions did not give rise to any issue of constitutional magnitude. As such the Court further finds that Chief Holmes is entitled to qualified immunity from suit. See Francisco v. Hebert, 2007 WL 1805772, at *10 (W.D. La. 2007), citing Gibson v. Rich, 44 F.3d 274, 277 (5th Cir. 1995) (holding government officials are entitled to qualified immunity from suit when performing discretionary functions unless their conduct violated statutory or constitutional rights, clearly established at the time of the alleged incident, of which a reasonable person would have known).

### E. State Law Claims

Defendants request that the Court dismiss Huggins' state law claims against them with prejudice, arguing that Huggins has failed to state a specific cause of action under

Louisiana law. See Record Document 16-9 at 29. Plaintiff fails to address his state law claims in his brief.

Huggins references violations of the Louisiana Constitution of 1974, as well as the laws and statutes of Louisiana in his Complaint, but does not cite any specific provisions of the Louisiana Constitution, or any Louisiana laws or statutes which are allegedly violated. See Record Document 1 at 1 and 4. In fact, Huggins' "Causes of Action" omit any reference to state law claims and he does not address any state law claims in his brief. See id. at 5. The Court cannot discern any causes of action under Louisiana statutes from Huggins' Complaint and, therefore, will not address any statutory claims.

However, Huggins does allege violation of his "constitutionally protected right as a citizen to participate in free speech, and to render an opinion on matters of public concern." Id. at 4. La. Const. art. I, § 7 states, "[e]very person may speak, write, and publish his sentiments on any subject." La. Const. art. I, § 9 provides, "[n]o law shall impair the right of any person to assemble peaceably or to petition government for a redress of grievances." "Claims under Article 1, §§ 7, 9 are equivalent to claims under the First Amendment." Lawson v. City of Monroe, 2013 WL 3967161, at *5 (W.D. La. 2013). Just as there was no evidence to support Huggins' Section 1983 claims under the First Amendment (discussed above), the same lack of evidence warrants dismissal of Huggins' Article I claims under the Louisiana Constitution of 1974.

Huggins also alleges violation of his "constitutionally protected right as a civil service employee to be secure in his employment and to avoid arbitrary reassignment." Record Document 1 at 4. State and civil service systems are established by La. Const. art. X. Huggins does not reference any section of Article X relating to the "arbitrary

assignment," and he cites no Civil Service Rule allegedly violated. In any event, dismissal of Huggins' "civil service reassignment" claim is warranted. First, as was the case with Huggins' § 1983 unlawful transfer claim, his "arbitrary reassignment" claim under Article X is likewise prescribed under La. C.C. art. 3492 ("[d]elictual actions are subject to a liberative prescription of one year"). Second, even if his claim is not prescribed, Huggins cannot show his transfer was "arbitrary." In the context of civil service matters, the Louisiana Supreme Court has held that "arbitrary and capricious" means "the absence of a rational basis for the action taken." Bannister v. Department of Streets, 95-0404 (La. 1/16/96), 666 So.2d 641, 647. As discussed above, Huggins' transfer was unrelated to his free speech activities as Chief Holmes was unaware of any such activity. Moreover, Chief Holmes has submitted ample evidence, to which Huggins has not rebutted, that Huggins' reassignment served legitimate purposes. Chief Holmes wanted to provide Huggins with opportunities for public interaction prior to his promotion; Huggins' transfer was directly related to Chief Holmes' plans for reorganization of the police department, and his desire to more effectively use manpower in order to serve the public. See Record Document 16-5 at 10-15.

Huggins fails to show there is any genuine dispute of material fact regarding his state law claims under Articles I and X of the Louisiana Constitution of 1974. Accordingly, Huggins' state law claims are **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the foregoing reasons, Chief Holmes' Motion for Summary Judgment is **GRANTED**. Huggins' retaliation claims against Chief Holmes in his official capacity are claims against the municipality, the City, and Huggins cannot show any custom or policy

as it relates to his retaliatory transfer or failure to promote claims. Accordingly, Huggins' claims against Chief Holmes in his official capacity are **DISMISSED WITH PREJUDICE**. Regarding Huggins' retaliation claims against Chief Holmes in his individual capacity, his retaliatory transfer claim is prescribed, and he cannot assert his failure to promote claim against Chief Holmes. Therefore, Huggins' retaliation claims against Chief Holmes in his individual capacity are **DISMISSED WITH PREJUDICE**. Further, Huggins' punitive damage claim is **DISMISSED WITH PREJUDICE**. Additionally, Huggins' state law claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 8th day of January, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT